IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECELIA NORENE NAJERA, | No.  2:25-CV-0274-DMC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the Court are the parties' brief on the merits, ECF No. 11 and 16.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

1

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

Step 1      Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2      If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3      If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

/ / /

/ / /

2

Step 4      If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5      If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on January 28, 2021.  See CAR 234.[1] In the application, Plaintiff claims disability began on January 1, 2021.  See id.  At the hearing, Plaintiff amended the alleged onset date to January 28, 2021.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on March 6, 2023, before Administrative Law Judge (ALJ) Robert Freedman.  In a January 30, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.  The claimant has the following severe impairment(s): Ehlers-Danlos syndrome; fibromyalgia; obesity; bilateral carpal tunnel syndrome; personality disorders; and post-traumatic stress disorder (PTSD);

2.  The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.  The claimant has the following residual functional capacity: she can perform sedentary work; the claimant can frequently handle and finger; the claimant can perform simple, repetitive tasks; she can have no more than occasional interactions with supervisors, co-workers, and the general public;

4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 239-55.

After the Appeals Council declined review on December 31, 2024, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]  Citations are to the Certified Administrative Record (CAR) lodged on March 17, 2025, ECF No. 10.

## III.  DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ failed to provide sufficient reasons to reject Plaintiff's subjective statements and testimony at Step 4; (2) the ALJ failed to address all of her physical impairments when determining residual functional capacity; (3) the ALJ failed to properly address Plaintiff's mental impairments; and (4) the ALJ did not meet the Commissioner's burden of proof at Step 5.  See ECF No. 11, pg. 2.

### A.    Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable

6

to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ in this case provided the following summary of Plaintiff's subjective statements and testimony:

> The claimant alleged several symptoms arising from her impairments. When the claimant applied for benefits, she indicated that she was unable to work because of Ehlers-Danlos syndrome, asthma, diabetes mellitus, GERD, IBS, GAD, panic disorder with agoraphobia, PTSD, ADHD, and bipolar disorder. She also indicated that she had a BMI of 54.1. She later added that she had problems with fibromyalgia, CFS, dysmenorrhea, eczema and psoriasis, HS, hypothyroidism, MCAS, POTS, and Vitamin D deficiency and that she received IHSS for assistance with activities of daily living. After applying for benefits, the claimant submitted a Function Report, dated April 6, 2021. She wrote in that report that she had mobility difficulties, that she wore a brace and used a prescribed walker and wheelchair, and that she had problems with lifting, reaching, using her hands, her memory, understanding, following instructions, concentrating or paying attention, completing tasks, getting along with others, and handling stress or changes in routine. She added that her medications had side-effects of "brain fog," dry mouth, RLS, and vitamin deficiencies. (Exhibits B11E, page 2, and B14E, pages 6-8, see also Exhibits B1E, B3E, B5E-B7E, B11E, B14E, B15E, B18E, B23E, and B24E throughout.)
>
> * * *
>
> The claimant elaborated on her physical condition at the March 6, 2023, hearing, emphasizing the effects of her Ehlers-Danlos syndrome, fibromyalgia, and bilateral CTS. She indicated that she continued to have a BMI of 54.1. She explained that she had chronic joint pain and hypermobility of her joints. She testified that she wore braces for her CTS and that she used a walker and wheelchair for ambulation and getting around, noting that she used these assistive devices everyday inside and outside of her home. She indicated that the walker was prescribed. She explained that she was prescribed Celebrex and Norco for pain, but that it had not completely relieved her pain and caused fatigue. She recounted that she had tried exercising and physical therapy, but that it had exacerbated her symptoms. She estimated that she could still lift a gallon of milk or water, that she could only sit for 20 minutes at a time, and walk for a few minutes at a time. She noted that she would have to change positions while sitting and that she spent about two hours a day in a reclined position. She added that she also napped for three hours during the day.
>
> The claimant testified about her mental condition at the March 6, 2023, hearing as well, emphasizing the effects of her mood symptoms and "brain fog." She explained that she was in counseling and that she was prescribed psychiatric medications. The claimant also explained that she received

///

7

IHSS, which provided about 45 hours per week of support with her activities of daily living.

CAR 245-46.

The ALJ determined that Plaintiff's subjective statements and testimony was "inconsistent with her courses of treatment, examination findings, and reported functioning." CAR 246. As to limitations alleged by Plaintiff associated with Ehlers-Danlos syndrome, fibromyalgia, obesity, and bilateral carpal tunnel syndrome (CTS), the ALJ found that Plaintiff's allegations were not consistent with evidence of record showing that these impairments "have only prompted treatment with conservative measures, specifically just braces or splints for her CTS and medication management of her pain." CAR 246. Similarly, as to limitations alleged by Plaintiff due to mental impairments, the ALJ noted that the evidence shows "only limited mental health treatment. . . ." Id. The ALJ also observed: "Her mental health treatment has consisted of just counseling or psychotherapy and routine psychiatric medication management" and that Plaintiff has not required emergency, inpatient, or other more aggressive treatment for her mental health issues. Id. at 247. Additionally, as discussed above, the ALJ considered Plaintiff's contention that she required use of an assistive device, finding that such allegation was not supported by the evidence of record which does not include any prescription for an assistive device. See id.

Finally, the ALJ concluded that Plaintiff's reports of daily functioning further undermined her subjective statements and testimony as to the disabling effects of her symptoms. The ALJ found:

> The claimant's allegations were further undermined by her reported functioning. She alleged in statements and testimony that she was extremely limited with her activities of daily living such that she required IHSS and was reliant on Ms. Najera for support with her day-to-day needs. That degree of limited day-to-day functioning was not supported by the claimant's medical record, specifically given her limited courses of treatment and limited positive examination findings. Moreover, it was inconsistent with the claimant's reported functioning at the June 2021 and February 2022 Psychological Consultative Examinations. She reported at the June 2021 examination that she was independent with her activities of daily living, including that she could perform her self-care, do "light" household chores, prepare meals, and go shopping. She indicated some difficulties with household chores at the February 2022 examination,

8

but reported that she could still do some of them as well as tend to her personal care and manage her finances. She also reported during that examination that she got along "fair" with others. In addition, while the claimant testified to extensive limitations, she also testified that she was active on social media. She testified that she had three social media accounts that she checks several times per day, which suggests relatively intact abilities for at least simple, repetitive tasks and for fine manipulation of personal devices. Likewise, the claimant's estimate that she could still lift a gallon of milk or water suggest relatively intact abilities for lifting or carrying and gross manipulation. The claimant's reported functioning at the June 2021 and February 2022 Psychological Consultative Examination, active use of social media, and estimated ability to lift a gallon of milk or water are more consistent with her limited courses of treatment and limited positive examination findings than her broad allegations of being extremely limited with her activities of daily living. Moreover, in combination with the claimant's limited courses of treatment and limited positive examination findings, her reported functioning at the June 2021 and February 2022 Psychological Consultative Examination, active use of social media, and estimated ability to lift a gallon of milk or water instead indicated that she had relatively intact abilities for lifting or carrying, fine and gross manipulation, and simple, repetitive tasks that supported that she could still perform and sustain a range of unskilled sedentary work. (Exhibits B29F, page 2, and B33F, page 3, see also Exhibits B13E, B14E, and B22E throughout.)

CAR 248.

Plaintiff argues that the ALJ's analysis is flawed because "the ALJ has not resolved the discrepancy between Ms. Najera's explanation of her mental and functional limitations." ECF No. 11, pg. 20. More specifically, Plaintiff appears to contend that the ALJ failed to explain rejection of Plaintiff's testimony that she required use of an assistive device. See id. The Court does not agree. As outlined above, the ALJ directly considered Plaintiff's allegations that she required use of an assistive device and rejected this assertion because the evidence does not contain any prescription for an assistive device. Further, and not addressed by Plaintiff, the ALJ properly noted that Plaintiff has only received conservative treatment for her impairments. Finally, the ALJ properly noted inconsistencies between Plaintiff's statements and testimony as to her activities of daily living and reports made to various doctors regarding her daily activities.

/ / /

/ / /

/ / /

9

**B.**      **Physical Impairments**

Residual functional capacity is the most a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations. An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record. See SSR 85-15.

Obesity may enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003). Thus, as part of his duty to develop the record, the ALJ is required to consider obesity in a multiple impairment analysis, but only where it is "clear from the record that [the plaintiff's] obesity . . . could exacerbate her reported illnesses." Id. at 1182; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that a multiple impairment analysis is not required where "the medical record is silent as to whether and how claimant's obesity might have exacerbated her condition" and "the claimant did not present any testimony or other evidence . . . that her obesity impaired her ability to work"). Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis. See Burch, 400 F.3d at 684.

Here, Plaintiff argues very generally that the ALJ failed to address her carpal tunnel syndrome, Ehlers-Danlos syndrome, fibromyalgia, and obesity. See ECF No. 11, pgs. 7-14. Specifically, Plaintiff asserts:

> . . .[T]he ALJ did not provide a reasonable evaluation as to Ms. Najera's arm and hand limitations from carpal tunnel in combination with Ehlers-Danlos Syndrome (EDS), fibromyalgia, and severe obesity with diabetes. . . .
>
> ECF No. 11, pg. 7.

Plaintiff adds that the ALJ's residual functional capacity determination is "ambiguous" because the ALJ did not address arm and shoulder limitations. Id. at 8. Plaintiff also claims that the ALJ

did not address the conflict between Plaintiff's limited use of her hands and the finding that

Plaintiff could frequently finger and handle.  See id. at 9.  Plaintiff further contends that the ALJ

". . .leaves unresolved the effects of the combination of Ehlers-Danlos syndrome, fibromyalgia,

obesity as they apply to functional limitations in the RFC."  Id. at 12.  Finally, Plaintiff claims the

ALJ failed to address her obesity consistent with Social Security Ruling (SSR) 19-2.  See id. at

13-14.

The hearing decision reflects the following analysis at Step 4 of Plaintiff's alleged

limitations resulting from her carpal tunnel syndrome, Ehlers-Danlos syndrome, fibromyalgia,

and obesity.  See CAR 246-49.  The ALJ stated as follows:

> As discussed above [at Step 2 concerning the severity of impairments], the claimant's medical record shows that she has severe Ehlers-Danlos syndrome, fibromyalgia, obesity, and bilateral CTS, but that those impairments have only prompted treatment with conservative measures, specifically just braces or splints for her CTS and medication management of her pain. She did not report any side-effects from those medications. The claimant has not required more aggressive treatment for her physical impairments since January 2021. Moreover, other than isolated instances of having decreased sensation in both hands, hyper-flexibility of the joints, positive Tinel's signs, or widespread tender points since January 2021, the claimant has otherwise and often had normal or unremarkable musculoskeletal and neurological examination findings with no signs of acute distress or pain behavior, chronic fatigue, or impaired balance, gait, and grip or motor strength. The claimant's limited treatment and limited positive musculoskeletal and neurological examination findings indicate that her Ehlers-Danlos syndrome, fibromyalgia, obesity, and bilateral CTS are relatively mild impairments that have a limited impact on her physical functioning. (See Exhibits B22F, B29F-B31F, B33F-B35F, and B38F-B40F throughout.)
>
> * * *
>
> The objective findings in the medical record and the claimant's statements suggest that she has reduced physical work-related abilities because of the effects of her Ehlers-Danlos syndrome, fibromyalgia, obesity, and bilateral CTS. The residual functional capacity accounts for those problems by restricting her to work that requires relatively less lifting or carrying and standing or walking and by limiting use of her hands. However, the residual functional capacity reflects the claimant's limited treatment and limited positive limited positive musculoskeletal and neurological examination findings—with no signs of acute distress or pain behavior, chronic fatigue, or impaired balance, gait, and grip or motor strength—and her reported functioning, all discussed above, which indicated that her physical work-related abilities remain substantively intact and that she could still perform and sustain a range of sedentary work. (SSRs 96-8p,

///

11

96-9p, 12-2p, and 19-2p.)

CAR 246, 249.

This Court does not agree with Plaintiff's argument.  When reviewing Plaintiff's case, the hearing decision clearly shows that the ALJ evaluated the combined effects of Plaintiff's various disorders. See CAR 46. Although the ALJ did not directly specify the degree or severity of Plaintiff's combined impairments, the ALJ emphasized that Plaintiff only received conservative treatment and that objective musculoskeletal and neurological examination findings showed no acute distress or pain behavior. See id.  Moreover, as further evidence that the ALJ considered Plaintiff's impairments in combination, the ALJ accounted for specific limitations associated with Plaintiff's physical impairments by including restrictions on Plaintiff's general ability to engage in sedentary work.  See CAR 248.  In doing so, the ALJ also noted that Plaintiff is obese, with a BMI of 54.1.  See CAR 246.

Finally, the Court rejects Plaintiff's apparent argument that the ALJ failed to address the prescribed use of an assistive device.  As to use of an assistive device, the ALJ stated:

> Pursuant to SSR 16-3p, the undersigned took particular note of the claimant's alleged use of assistive devices for ambulation. Specifically, the claimant alleged that she used a walker and wheelchair. Her treatment notes also show that she claimed to use a cane. The claimant's medical record shows that she was not observed by examining or treating sources to use a cane or wheelchair, but she was observed to use or have a walker with her during examinations in March, May, June, July, and September 2021 and in February, March, April, July, and October 2022. Ms. Buhler noted that it was "normal" for the claimant to use or have a walker with her, even though it was not evident that she brought it to every examination. Ms. Buhler also noted that the walker was as in "poor repair," which indicated that it had limited useful functioning. However, regardless of the functioning of the walker, it was remarkable that it was not evident that the claimant had been prescribed a cane, walker, or wheelchair or that use of such assistive devices was medically necessary since she did not demonstrate signs of impaired balance, gait, and motor strength in her legs. It was equally remarkable that no medical source directly opined that the claimant required use of a cane, walker, or wheelchair or similar assistive device. Since it was not evident that the claimant was prescribed an assistive device for ambulation or that such a device was even medically necessary, the undersigned found that her alleged need for a cane, walker, or wheelchair was inconsistent with her medical record and that more restrictive limitations for use of an assistive device or for standing or walking were not warranted for the residual functional capacity finding. (Exhibits B22F, pages 38-39, B29F, page 3, B30F, page 4, B31F, pages 2, 4, 25, 29, 41-42, 51, B33F, page 1, B35F,

page 25, 37, and B38F, page 25, see also Exhibits B22F, B29F-B31F, B33F-B35F, and B38F-B40F throughout.)

CAR 247.

This discussion shows that the ALJ considered Plaintiff's claim of the need to use an assistive device, finding that Plaintiff had never been prescribed such a device and the objective evidence showed that use of an assistive device was not necessary.

**C.      Mental Impairments**

In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record pertinent findings and rate the degree of functional loss consistent with what are known as the "paragraph B" criteria.  See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

In this case, the ALJ first discussed Plaintiff's mental impairments at Step 2.  See CAR 241.  The ALJ stated:

> The claimant's medical record shows that she has severe mental impairments as well, specifically anxiety disorders, personality disorders, and PTSD. Her medical record shows that she has been diagnosed with and treated for anxiety disorders—such as anxiety disorder, generalized anxiety disorder (GAD), and unspecified anxiety disorder—and personality disorders—specifically borderline personality disorder (BPD) and unspecified personality disorder—as well as PTSD since before she applied for benefits on January 28, 2021. Her mental health treatment for those impairments has focused on complaints of agoraphobia, panic, and mood symptoms and has consisted of counseling or psychotherapy and routine psychiatric medication management. She has not reported any side-effects from those medications. The claimant did not report complete improvement with her limited mental health treatment, but it has been effective enough that she has not required emergency, inpatient, or otherwise more aggressive mental health treatment throughout the period at issue. (Exhibits B22F, pages 35-51, B29F, pages 1-8, B33F, pages 1-5, B38F, pages 2-11, 17-48, B41F, page 1, and B42F, pages 1-2, see also Exhibits B2F, B6F, B8F-B10F, B22F, B30F, B31F, B34F, and B38F throughout.)

///

13

The claimant's mental status examination (MSE) findings indicate that her limited mental health treatment was appropriate and effective. She has presented with isolated positive findings of appearing dysphoric, "slightly" anxious, or "somewhat" expansive, rambling speech, or slightly impaired delayed recall since January 2021, but has otherwise had generally normal MSE findings with no signs of consistent or persistent behavioral or cognitive abnormalities throughout the period at issue. Moreover, during June 2021 intelligence testing, the claimant demonstrated average, "high average," and "superior" full-scale IQ, perceptual reasoning, verbal comprehension, and working memory. Those findings, of lack of, indicate that the claimant's limited mental health treatment was appropriate and effective and that her anxiety disorders, personality disorders, and PTSD have a limited impact on her mental functioning. (Exhibits B22F, pages 35-39, 47-51, B29F, pages 1-8, B30F, pages 1-5, B31F, pages 22, 29, 41-42, 51, 62, 70-71, B33F, pages 1-5, B34F, pages 1-5, and B38F, pages 4, 9, 20, 25-26, 31, 37, 41, 47, see also Exhibit B39F throughout.)

The claimant's medical record establishes that she has severe anxiety disorders, personality disorders, and PTSD and that she requires mental limitations. However, the claimant's limited mental health treatment and limited positive MSE findings—with no signs of consistent or persistent behavioral or cognitive abnormalities—indicate that those impairments have a limited impact on her mental functioning and that her mental work-related abilities remain largely intact.

CAR 241.

The ALJ's consideration of Plaintiff's mental impairments continued at Step 3. Specifically, applying the "paragraph B" criteria, the ALJ determined as follows:

Furthermore, the undersigned considered whether the claimant's severe and nonsevere mental impairments were of listing-level severity. The severity of the claimant's severe and nonsevere mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.06 (Anxiety and obsessive-compulsive disorders), 12.08 (Personality and impulse-control disorders), and 12.15 (Trauma- and stressor-related disorders). In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

The undersigned found that the claimant had only a mild limitation with adapting and managing oneself and that she had no more than moderate limitations with understanding, remembering, and applying information, interacting with others, and maintaining concentration, persistence, and pace. In making those findings, the undersigned noted the claimant's allegations, but also that her medical record showed that she has required

14

only limited mental health treatment and that she has presented limited with positive MSE findings with no signs of consistent or persistent behavioral or cognitive deficits since applying for benefits in January 2021. To the contrary of the claimant having cognitive deficits, during June 2021 intelligence testing, she demonstrated average, "high average," and "superior" full-scale IQ, perceptual reasoning, verbal comprehension, and working memory, which is indicative of at least broadly intact cognitive functioning. The claimant's limited mental health treatment and limited positive MSE findings indicated that she still retained at least fair abilities for understanding, remembering, and applying information, interacting with others, and maintaining concentration, persistence, and pace and that her ability to adapt and manage herself was no more than slightly limited and that she had no more than moderate mental limitations. (See Exhibits B22F, B29F-B31F, B33F, B34F, B38F, B39F, B41F, and B42F throughout.)

The undersigned also took particular note of the claimant's reported functioning. The claimant alleged that she was extremely limited with her activities of daily living and that she required in-home supportive services (IHSS) for assistance with her daily functioning in her April 6, 2021 Function Report and other statements and at the March 6, 2023, hearing. She also alleged significant difficulties with getting along with others, except for her sister. However, at the June 2021 Psychological Consultative Examination, the claimant reported that she was independent with her activities of daily living, including that she could perform her self-care, do "light" household chores, prepare meals, and go shopping. The claimant reported a similar degree of independent functioning at the February 2022 Psychological Consultative Examination, indicating that she had problems with household chores, but that she could still do some of them. She denied having problems with tending to her personal care and indicated that she could manage her finances. She also reported during that examination that she got along "fair" with others. The claimant's reported functioning at the June 2021 and February 2022 Psychological Consultative Examinations is more consistent with her limited mental health treatment and limited positive MSE findings than her allegations, and instead further supported that she had no more than moderate mental limitations and suggested that she could still perform and sustain a range of unskilled work. (Exhibits B14E, pages 1-8, B29F, page 2, and B33F, page 3, see also Exhibits B13E and B22E throughout.)

Because the claimant's severe and nonsevere mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

CAR 243-44.

In addition to the "paragraph B" criteria, the ALJ considered what are known as the "paragraph C" criteria:

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The medical record does not establish that the claimant had a "serious and persistent" mental disorder or only marginal adjustment, which is only a minimal capacity to adapt to changes in her

15

environment or to demands that were not already part of her daily life. (See Exhibits B13E, B14E, B22E, B22F, B29F-B31F, B33F, B34F, B38F, B39F, B41F, and B42F throughout.)

CAR 244.

Finally, the ALJ further considered mental impairments at Step 4 in concluding that Plaintiff's residual functional capacity should include limitations to only simple, repetitive tasks with no more than occasional interactions with the public, co-workers, and supervisors. The ALJ stated:

Likewise, the claimant's medical record shows that she has required only limited mental health treatment for the effects of her severe anxiety disorders, personality disorders, and PTSD as well as her various nonsevere mental impairments. Her mental health treatment has consisted of just counseling or psychotherapy and routine psychiatric medication management. She has not reported any side-effects from those medications. She did not report complete improvement with her limited mental health treatment, but it has been effective enough that she has not required emergency, inpatient, or otherwise more aggressive mental health treatment throughout the period at issue. As for the claimant's MSE findings, she has had only isolated positive findings and has otherwise and often had generally normal MSE findings with no signs of consistent or persistent behavioral or cognitive abnormalities since January 2021. In addition, during June 2021 intelligence testing, the claimant demonstrated average, "high average," and "superior" full-scale IQ, perceptual reasoning, verbal comprehension, and working memory. The claimant's limited mental health treatment and limited positive MSE findings indicate that her severe and nonsevere mental impairments have a limited impact on her mental functioning. (See Exhibits B22F, B29F-B31F, B33F, B34F, B38F, B39F, B41F, and B42F throughout.)

* * *

The residual functional capacity set forth above addresses the claimant's alleged symptoms to the extent the medical record support them. The restriction to sedentary work with additional manipulative and mental limitations provides for the substantiated effects of the claimant's Ehlers-Danlos syndrome; fibromyalgia; obesity; bilateral CTS; anxiety disorders; personality disorders; and PTSD.

* * *

Furthermore, the objective findings in the medical record and the claimant's statements suggest that she has reduced mental work-related abilities due to the effects of her anxiety disorders, personality disorders, and PTSD, particularly in terms of understanding, remembering, and applying information, interacting with others, and maintaining concentration, persistence, and pace. The effects of the claimant's nonsevere affective disorders and ADHD also likely contribute to those limitations, even though it was not evident in her medical record that either impairment imposed or would impose more than minimal work-

16

related functional limitations for 12 or more months. The claimant's "brain fog" from her fibromyalgia likely contributes to her reduced mental work-related abilities as well. The residual functional capacity accounts for the claimant's limitations with understanding, remembering, and applying information and maintaining concentration, persistence, and pace by restricting her to performing simple, repetitive tasks and accounts for her limitation with interacting with others by restricting the frequency of her interactions with supervisors, co-workers, and the general public. However, the residual functional capacity reflects the claimant's limited mental health treatment and limited positive MSE findings—with no signs of consistent or persistent behavioral or cognitive abnormalities—and her reported functioning, all discussed above, which indicated that her mental work-related abilities remain largely intact and that she could still perform and sustain a range of unskilled work. (SSRs 96-8p, 96-9p, and 12-2p.)

CAR 248-49.

Plaintiff argues the ALJ failed to accurately apply the "paragraph B" or "paragraph C" criteria. See ECF No. 11, pgs. 14-19.

As to the "paragraph B" criteria, Plaintiff notes that the ALJ found that Plaintiff has moderate limitations in focus and concentration and argues that this finding is not adequately reflected in the ALJ's finding at Step 4 that Plaintiff is limited to sedentary work involving simple and routine tasks. See id. at 15-16. The Court does not agree and finds that Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008), controls. In Stubbs-Danielson, the Ninth Circuit concluded that the ALJ's limitations on the complexity of tasks the plaintiff could perform adequately captured at Step 4 previous findings that the plaintiff was moderately limited with respect to concentration, persistence, and pace. See id. at 1174. The same follows here – that the ALJ's finding that Plaintiff can perform sedentary work which involves only simple and routine tasks adequately captures the ALJ's finding that Plaintiff is moderate limitations in focus and concentration.

Plaintiff's reliance on Macias v. Saul, E. Dist. Cal. case no. 1:19-cv-1187-BAM, and the cases cited therein, is misplaced. In Macias and the cases cited in Macias, the tension was between a finding that the plaintiff could perform simple one- and two-step tasks did not adequately capture moderate limitations in the ability to attend work and complete a normal workday. The current case, however, deals with moderate limitations in Plaintiff's ability to focus and concentrate. As in Stubbs-Danielson, this limitation is adequately described by a

17

limitation to simple and routine tasks.

As to the "Paragraph C" criteria, Plaintiff argues the ALJ erred because, despite the ALJ's finding to the contrary, the record shows that Plaintiff has a "serious and persistent" mental disorder. See ECF No. 11, pgs. 17-18. The Court does not agree. At the outset, the Court notes that Plaintiff's brief cites an ALJ's findings from a prior claim filed by Plaintiff in May 2016. Plaintiff's argument is not based on the current ALJ decision from January 2024. In any event, as the ALJ in the prior decision cited by Plaintiff noted, the "paragraph C" criteria set forth in the Listing of Impairments are satisfied with evidence of a mental disorder over a period of at least 2 years and both of the following: (a) evidence showing that the claimant relies on medication, treatment, or structured settings an ongoing basis; and (b) evidence showing that the claimant has achieved only marginal adjustment, meaning that adaptation to the requirements of daily life is fragile. See Listing 12.00. Here, as discussed above in the context of Plaintiff's subjective statements and testimony, the evidence shows that Plaintiff's adaptation to activities of daily living are not fragile, despite her mental impairments.

### D.  **Vocational Findings**

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids at Step 5 in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of

18

the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Here, the ALJ determined that Plaintiff's has non-exertional limitations which preclude application of the Grids. See CAR 254. As a result, the ALJ submitted questions to a vocational expert. See id. The vocational expert testified that, given the residual functional capacity determined by the ALJ, Plaintiff was capable of performing the following jobs which exist in the national economy: (1) patcher, approximately 182,000 jobs nationally; (2) table worker, approximately 123,000 jobs nationally; and (3) touchup screener, approximately 158,000 jobs nationally. See id.

Largely based on her claims of error discussed above, Plaintiff argues that the ALJ vocational findings at Step 5 are inadequate because "[e]ach of the jobs [identified by the vocational expert] require the full use of Ms. Najera's hands and arms." ECF No. 11, pg. 21. This argument is not persuasive because the evidence supports the ALJ's determination at Step 4 that Plaintiff's residual functional capacity for sedentary work is not eroded by limitations associated with use of her hands or arms.

///
///
///
///
///
///
///
///
///

19

## IV.  CONCLUSION

Based on the foregoing, the Court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment, ECF No. 11, is denied;

2.    Defendant's motion for summary judgment, ECF No. 16, is granted;

3.    The Commissioner's final decision is affirmed; and

4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated:  March 26, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

20